Putnam *v.* Clark.

---

### ADAH A. PUTNAM

*v.*

### LYDIA A. CLARK et al.

Leave to file a bill of review, on the ground that the complainant has, since decree, discovered the whereabouts of a material witness, of whose existence and materiality she knew when she began her suit, denied on the ground of laches, and the impolicy of allowing a renewal of the litigation.

Bill for relief. Motion for leave to file a bill of review. On petition and affidavits.

*Mr. C. H. Hartshorne* and *Mr. C. Parker,* for the motion.

*Mr. C. L. Corbin, contra.*

THE CHANCELLOR.

The complainant asks leave to file a bill of review, not on the ground of the recent discovery of material evidence, but of the recent discovery of the whereabouts of the witness, William C. Barrett, by whom an important fact can be proved. The fact to be proved is not a new discovery; nor is it a recent discovery

3

that the witness can prove it.    When the bill was filed both facts were known to the complainant.    Her bill was filed May 31st, 1876, to set aside as fraudulent an assignment of a bond and mortgage, and to compel the defendants, the executors of Hosea Clark, deceased, to deliver up those instruments to the complainant.    The complainant's case was that she had executed the assignment; that when she executed it, it was by its terms an assignment to William Ramsey, of Montreal; that after she executed it she left it in the hands of William C. Barrett, of the city of New York, her attorney, to be delivered to Ramsey, who Barrett informed her would purchase the bond and mortgage; that it was never delivered to Ramsey, but Barrett altered it by erasing part of Ramsey's name and substituting his own, and then delivered it to the Relief Fire Insurance Company, by which the bond and mortgage were assigned to Amasa A. Redfield, by whom they were assigned to the defendant, Lydia A. Clark.    It appeared in the cause that Mrs. Clark held them merely in trust for her husband, who obtained them for valuable consideration, and caused them to be assigned to her in trust for himself.    At the time of filing the bill he was dead, and his executors were made parties to the suit on their own application. On the hearing the bill was dismissed by decree of May 27th, 1878, and the action of this court in that respect was afterwards, December 10th, 1880, affirmed on appeal.    *Putnam* v. *Clark, 2 Stew. Eq. 412 ; S. C. on appeal, 6 Stew. Eq. 338.*    On the 14th of December, 1880, the complainant instituted an action of detinue against Mrs. Clark for the recovery of the bond and mortgage, but on the application of the defendants in this suit on bill filed by them against her, she was enjoined from prosecuting that action, on the ground that the matter which she sought to litigate in the court of law had already been adjudicated upon here.    The action of this court on that subject was affirmed on appeal.    *Putnam* v. *Clark, 7 Stew. Eq. 532.*    The suits at law and here were for the same object, but the complainant claimed that she had the right to retry the matter in the court of law because, by reason of the fact that the executors were defendants, she was prevented from giving her own testimony in the suit

here, whereas, in the suit at law, which was against Mrs. Clark individually, she would not be debarred from testifying in her own behalf. This claim proved unavailing. She now asks leave to file a bill of review because she says she now knows, as she avers she did not until May or June, 1881, where Barrett is. She alleges in her petition that she was unable, up to that time, to ascertain his whereabouts, because he concealed himself. She, of course, is chargeable with knowledge when she filed her bill in this suit in 1876, of the importance of his testimony, and if she supposed she could succeed without it, and therefore did not try to get it, but went on without it, that is no excuse. She stands before the court as a complainant who, having brought suit, has voluntarily gone to hearing without the testimony of a witness of whose existence she knew, but whose testimony she did not deem material or perhaps underestimated, and of whose testimony she was not deprived by the defendants. In the bill she charged that Barrett made the alteration in the assignment after it was executed. On the subject of diligence she says in her petition that, until the decree of this court was pronounced in 1878, it would have been useless to attempt to communicate with him relative to her case, for until then he was in conceal-ment through fear of punishment for his crimes in embezzling the property of his clients. She says she requested two persons, whom she names, and who she says were the only persons that she supposed were in communication with him, to state where he was, but they denied that they had any knowledge of his where-abouts, though she believes that one of them was, in fact, in com-munication with him. She says she heard rumors, at different times, that he was in Belgium and Ireland, but was unable to trace them to any trustworthy source, and that she at one time addressed a letter to his wife and gave it to one of the persons above referred to, to send to her, but that she never received any reply to it. It appears, from the petition, that it was not until May or June of 1881 that she applied to Barrett's nephew, who lived in New York and was a friend of hers, for informa-tion (which she obtained from him) as to the whereabouts of his uncle, though she says he had correspondence with Barrett from

a period of about two or three years after the latter's flight, which took place in April, 1876; that is, from about April, 1878, or April, 1879. When the correspondence began does not more particularly appear. Whether she might not have discovered Barrett's whereabouts from his nephew, or by his aid, had she applied to him at an earlier day, does not appear. It was not until some months after the final decree of this court had been affirmed by the court of *dernier ressort* that any application was made to the nephew (although, as before stated, he was a friend of hers) to discover Barrett's whereabouts. He says, indeed, in his affidavit, that he did not know until the correspondence took place where Barrett was, but it does not appear that he ever previously tried to ascertain, nor but that he knew where she could get information on the subject. Nor does there appear to have been any indication in the progress of the suit of any effort to get the testimony. The complainant knew of Barrett's whereabouts in or about May or June, 1881, but made no application to file a bill of review until the spring of 1882, when the application was made to the court of errors and appeals. In the meantime, in December, 1881, instead of such application to this court, she began a suit at law to recover the bond and mortgage. I am constrained to conclude that apart from other considerations she has been guilty of laches in the matter, both as to obtaining the testimony and as to the application for the benefit of it to such a degree as to disentitle her to relief in the premises, if she had otherwise been entitled to any. But apart from these considerations, if it were conceded that she has used due diligence to obtain the testimony and in making the application, the prayer of the petition ought not to be granted. The whole matter rests in the sound discretion of the court, which is to be exercised so as to effectuate the ends of justice. " The granting of a bill of review," says Judge Story, " for new-discovered evidence is not a matter of right, but rests in the sound discretion of the court. It may therefore be refused, although the facts, if admitted, would change the decree when the court, looking to all the circumstances, shall deem it productive of mischief to innocent parties, or for any other cause unadvisable." *Story's*

*Eq. Pl.* § *417.* This suit was brought six years ago against those who hold the bond and mortgage for valuable consideration, and without notice of the alleged fraud. It went to decree here four years ago, and was taken by appeal to the court of last resort, where it was decided (as in this court) adversely to the complainant, in December, 1880. The attempt of the complainant to retry the cause at law was successfully resisted by the defendants, on the ground that the subject was *res adjudicata ;* that the trial which had been had here was conclusive of the matter between the parties, and therefore that the defendants ought not to be harassed with another litigation. That consideration applies with equal force to the present application. The case is one to which the principle of the maxim which declares the policy of restraining litigation within reasonable limits, is eminently applicable. It would be as unjust as it would be impolitic to grant the prayer of this petition, and subject the defendants to what would be practically the fourth litigation over this matter, which four years ago was decided in their favor in the forum chosen by the complainant, and on the case as made and submitted by her for decision; and thence, went on her motion with like result, to the tribunal of last resort. The injustice and impolicy of granting such an application, under such circumstances, are manifest. The petition will be dismissed, with costs.